# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JIMMY A HINCK,                  ) | |
|             ) | |
|          **Plaintiff,**       ) | |
|        ) | **CIVIL ACTION** |
| **v.**                      ) | |
|        ) | **No. 11-1061-JWL** |
|        ) | |
| **MICHAEL J. ASTRUE,**    ) | |
| **Commissioner of Social Security,**    ) | |
|        ) | |
|          **Defendant.**      ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's assessment regarding Plaintiff's mental residual functional capacity (RFC), the court ORDERS that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I.     Background

Plaintiff applied for DIB in October 2007, and for SSI in February 2008, alleging disability beginning January 25, 2005.  (R. 8, 98-112).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 8, 39-42, 62-64).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Robert J. Burbank on May 12, 2009.  (R. 19).  Although a vocational expert also appeared at the hearing, testimony was taken only from Plaintiff.  (R. 8, 19-38).

After the hearing, ALJ Burbank issued a decision on October 2, 2009 finding that although Plaintiff is unable to perform his past relevant work, there are jobs in the national economy in significant numbers that Plaintiff is able to perform.  (R. 8-18).  Consequently, he determined that Plaintiff is not disabled within the meaning of the Act, and denied his applications.  (R. 18).  Plaintiff sought, but was denied Appeals Council review of the hearing decision.  (R. 1-4).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.  (Doc. 1).

## II.   Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period

of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993)

(citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir.

1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity

that he is not only unable to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work

existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir.

2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used

at both step four and step five of the sequential evaluation process.  Id.

4

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform his past relevant work; and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims numerous errors in the ALJ's assessment of Plaintiff's RFC, including errors in assessing the credibility of Plaintiff's allegations of pain, in evaluating medical opinions, and in evaluating limitations resulting from Plaintiff's mental impairments.  The Commissioner argues that Plaintiff's claims are without merit because the ALJ applied the correct legal standard and properly explained his findings, and that substantial record evidence supports those findings.  The court finds that remand is necessary because the ALJ erred in evaluating the limitations resulting from Plaintiff's mental impairments.  Therefore, it need not address the remaining errors alleged by Plaintiff, and Plaintiff may make those arguments before the Commissioner on remand.

## III.    Evaluation of Limitations Resulting from Mental Impairments

Plaintiff argues that Finding 5 of the decision, "'the residual functional capacity to perform the full range of sedentary work . . . with limitations to simple to intermediate work,' . . . is not a proper RFC determination."  (Pl. Br. 4-5) (quoting Finding 5 of the ALJ's decision).  He argues that "limitations to simple to intermediate work" is not a sufficient function-by-function assessment of mental abilities as defined in the regulations and as required by Social Security Ruling 96-8p and the POMS (the Social Security Administration's Program Operations Manual System).  Id. at 5.  He asserts that such a "limitation" fails to state an actual limitation, and renders the RFC assessed unreviewable. Id. at 6.

The Commissioner argues that Plaintiff's argument lacks merit.  (Comm'r Br. 4). He notes that the ALJ limited Plaintiff to "simple to intermediate work" due to his mental impairments.  Id. at 5.  He asserts that an RFC assessment is different from a finding regarding the severity of mental impairments at steps two and three of the sequential evaluation process as guided by the Commissioner's psychiatric review technique.  Id. at 6 (citing 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3)).  He points out that "the ALJ found that Plaintiff had moderate difficulties with concentration, memory, and completing tasks at steps two and three," and that "[a]t step four, the ALJ determined that, with this degree of impairment, Plaintiff retained the RFC to perform simple to intermediate tasks." Id.  The Commissioner argues that Plaintiff did not suggest any specific mental limitations which should have been included, and asserts that a court will not speculate on

a party's behalf to identify limitations which should have been included in the RFC.  Id. (citing Threet v. Barnhart, 353 F.3d 1185, 1190 (10th Cir. 2003)).  The Commissioner argues that in any case, the ALJ found no limitations in certain mental abilities and asserts that the "RFC finding properly accounted for all of Plaintiff's mental limitations." (Comm'r Br. 6).

The court agrees with Plaintiff.  It finds that the ALJ did not articulate a function-by-function assessment of Plaintiff's mental abilities; that the finding that Plaintiff has "limitations to simple to intermediate work" is not explained or defined in the decision with relation to mental functional abilities; and that the court is unable to find a definition or meaning for the term "limitations to simple to intermediate work."  Consequently, the court is unable to determine the precise range of work of which the ALJ found Plaintiff is capable and it is, therefore, unable to determine whether the ALJ's finding is supported by substantial evidence in the record.

## A.    The ALJ's Consideration of Mental Impairments and Limitations

The ALJ found at step two of the sequential evaluation process that Plaintiff has severe mental impairments of "cognitive disorder and depression."  (R. 10).  At page five of the decision, he summarized and discussed the evidence regarding mental impairments. (R. 12).  In that discussion, the ALJ considered:  Plaintiff's allegations regarding mental impairments, the report of a consultative psychological evaluation performed by Dr. Carroll Ohlde on April 14, 2008 at the request of the state agency; treatment notes

regarding mental health treatment Plaintiff received at the advice of counsel from the

Mental Health Center of East Central Kansas between August 20, 2008 through May 11,

2009; the report of a neuropsychological evaluation completed by Dr. Eric Ecklund-

Johnson upon referral by Plaintiff's treating physician; and a medical source statement

completed by Plaintiff's treating psychologist at the Mental Health Center of East Central

Kansas, Dr. Maureen Burns.  (R. 12).  The court quotes here the ALJ's summary of the

reports of Dr. Ohlde, Dr. Ecklund-Johnson, and Dr. Burns:[1]

> A consultative psychological evaluation was performed by Carroll Ohlde,
> Ph.D. on April 14, 2008.  The diagnostic impression was major depressive
> disorder and cognitive disorder.  The mental status examination and WAIS-
> III and WMS-III noted signs of a normal mood with some signs of
> depression and frustration regarding his health problems.  There were some
> memory problems observed during the session.  Testing noted a basic
> immediate memory (78) and general memory (81) which were borderline to
> low average.  The claimant had a borderline range of intelligence with
> verbal IQ of 77, performance IQ of 83 and full scale IQ 78.  Overall, the
> summary noted the ability to understand and carry out simple and difficult
> instructions.  His attention, concentration and social skills were adequate.
> His adaptation and persistence were at an adequate pace (exhibit B4F) [(R.
> 324-30)].
>
> * * *
>
> A neuropsychological evaluation was performed by Eric Ecklund-Johnson,
> Ph.D. on February 26, 2009.  Testing reflected a low average range of
> intelligence with full scale IQ of 91.  Overall, the testing reflected a mild

---

[1]The court notes that Plaintiff alleges error in the ALJ's evaluation of the medical
opinions, including all of the medical opinions cited in this Memorandum and Order.  The
court does not express an opinion here regarding the propriety of the ALJ's evaluation of
the medical opinions.  On remand, the ALJ must once again address the weight to be
accorded each opinion.

> decline in selected aspects of cognitive ability.  The performances on
> several tasks that are among the most sensitive to acquired brain
> dysfunction were intact (exhibit B22F/33) [(R. 548)].
>
> * * *
>
> After the hearing, Maureen Burns, LCP signed a statement completed by
> counsel dated July 10, 2009.  She noted the diagnosis of major depressive
> disorder and completed a mental residual functional assessment noting 14
> marked limitations of function out of a possible 20.  Ms. Burns went on to
> state that the assessment was completed based on treatment notes and her
> memory noting it is not possible to record everything in treatment notes
> (exhibit B26F) [(R. 655-60)].

(R. 12).

At step three, the ALJ considered the four broad mental functional areas identified

in the Commissioner's psychiatric review technique and found that Plaintiff has "mild"

restrictions in activities of daily living; "mild" difficulties in social functioning;

"moderate" difficulties in concentration, persistence or pace; and no episodes of

decompensation of extended duration.  (R. 13).  The ALJ explained his finding of

"moderate" difficulties in concentration, persistence or pace:

> The claimant has reported some problems with memory, concentration and
> completing tasks.  However, neuropsychological evaluation found only mild
> impairments in cognitive abilities.  The claimant is capable of simple and
> intermediate tasks.

(R. 13).

The ALJ went on to explain that the limitations identified in the four broad mental

functional areas "are not a residual functional capacity assessment but are used to rate the

9

severity of mental impairments at steps 2 and 3 of the sequential evaluation process."  (R.

13-14).  He explained:

> The mental residual functional capacity assessment used at steps 4 and 5 of
> the sequential evaluation process requires a more detailed assessment by
> itemizing various functions contained in the broad categories found in
> paragraph B of the adult mental disorders listings in [§] 12.00 of the Listing
> of Impairments (SSR 96-8p).  Therefore, the following residual functional
> capacity assessment reflects the degree of limitation the undersigned has
> found in the "paragraph B" mental function analysis.

(R. 14).

In finding number five, the ALJ assessed Plaintiff with the RFC "to perform the

full range of sedentary work . . . with limitations to simple to intermediate work."  (R.

14).  In explaining his RFC assessment, the ALJ noted that Dr. Burns's opinion that

Plaintiff had "marked limitations in most all areas of function" was given "little weight"

because (1) the limitations are not reflected in Dr. Burns's treatment notes: (2) Dr. Burns

had only occasional contact with Plaintiff between August and December, 2008, and no

contact with Plaintiff in 2009 until the day before the ALJ's hearing, May 11, 2009; and

(3) the limitations are not supported by all of the record evidence.  (R. 16).  He found that

the reports of Dr. Ohlde and Dr. Ecklund-Johnson "reflect the ability to do simple to

intermediate work."  Id.

The ALJ stated his agreement with the medical opinions of the state agency

medical consultants.  Id.  He summarized their opinions with regard to mental limitations:

> The mental restriction[s] included moderate limitation in the ability to
> understand, remember and carry out detailed instructions (exhibit B8F) [(R.

10

351-54)] with mild restrictions in activities of daily living and maintaining social functioning, moderate difficulties in concentration, persistence or pace without evidence of episodes of decompensation of an extended duration (exhibit B7F) [(R. 337-50)].

(R. 16).  He found that the evidence received into the record after the consultants stated their opinions "did not provide any new or material information that would alter any finding about the claimant's residual functional capacity."  (R. 17).

**B.**     **Analysis**

In his step three analysis, the ALJ stated Plaintiff "is capable of simple and intermediate tasks."  (R. 13).  In his RFC assessment, the ALJ found Plaintiff is limited "to simple to intermediate work" (R. 14), and stated that the reports of Dr. Ohlde and Dr. Ecklund-Johnson "reflect the ability to do simple to intermediate work."  (R. 16).  The court notes three errors in these findings.

First, there is no explanation or discussion of if, whether, or how the term "simple and intermediate tasks" relates to the term "simple to intermediate work."  It appears that the ALJ has used the terms interchangeably, but there is no statement or explanation that they are interchangeable, and their usage, even in the decision at issue, does not require that they be equivalent and interchangeable.

In fact, the court notes that "task" is defined as "a specific piece or amount of work."  Webster's Third New International Dictionary of the English Language, Unabridged 2342 (1986).  Therefore, a task is often understood to be but one part of a job or of work which requires the performance of many tasks.  Consequently, "simple and

intermediate tasks" might be performed in work at many different levels of exertion, skill, difficulty, or complexity.  Moreover, the Commissioner appears to use the term "task" in the regulations to refer to an individual activity necessary in order to accomplish work in a particular job.  E.g., 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3) ("completion of tasks commonly found in work settings," "real or simulated work tasks (e.g., filing index cards, locating telephone numbers, disassembling and reassembling objects)"); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00(I)(8) ("completion of tasks commonly found in work settings," "complete work-related tasks").  From the decision at issue here, the court is unable to determine the meaning of the terms used by the ALJ, and whether the ALJ intended them to be equivalent and interchangeable, or whether they refer to different concepts.

Second, and relatedly, the ALJ did not define the terms or cite to administrative, legal, or medical authority which establishes the meaning of the terms.  Further, the Commissioner does not cite and the court is unable to locate (and is unaware of the existence of) authority establishing the terms as administrative, legal, or medical terms of art with a particular meaning.  Moreover, the meaning of the terms is not apparent on their face or apparent based upon the common understanding of the words involved.  In context, "simple and intermediate tasks" and "simple to intermediate work" may refer to the relative degree of difficulty of the tasks or of the work based upon any qualitative mental factor such as skill, intelligence, cognition, education, comprehension, memory,

attention, or numerous unknown other factors which have not been defined or identified in the decision.  Because the particular qualitative mental factor or factors intended by the ALJ are not identified or explained in the decision, the court is unable to determine how the ALJ intended the terms to be applied, and is unable to determine whether substantial record evidence supports the ALJ's finding.

Third, the ALJ did not explain how he arrived at the finding that Plaintiff is "capable of simple and intermediate tasks."  (R. 13).  He merely found that Plaintiff has "moderate" difficulty with concentration, persistence, or pace; noted that Plaintiff reported problems with memory, concentration, and completing tasks, but that neuropsychological evaluation showed only mild cognitive impairment; and concluded that Plaintiff is capable of simple and intermediate tasks.  Id.  The ALJ provides no explanation how he arrived at the conclusion that only mild cognitive impairment would limit the effect of Plaintiff's reported problems with memory, concentration, and completing tasks.  Moreover, he does not explain how he arrived at the further conclusion that moderate difficulty with concentration, persistence, or pace coupled with the limited effect of Plaintiff's reported problems and Plaintiff's mild impairment in cognitive abilities nonetheless permits the performance of "simple and intermediate tasks."

With respect to the finding that Plaintiff can do "simple to intermediate work," the ALJ's explanation fares only slightly better, for there, at least, the ALJ stated that he was in agreement with the medical opinions of the state agency medical consultants, and that

the reports of Dr. Ohlde and Dr. Ecklund-Johnson reflect the ability to do simple to intermediate work. (R. 16). However, once again he did not explain how the reports of the medical consultants or of Dr. Ohlde and Dr. Ecklund-Johnson establish that Plaintiff is capable of "simple to intermediate work."

The nearest support the court can find for the ALJ's finding is in the mental RFC assessment of the state agency psychologist, Dr. Carol Adams. (R. 351-54) (Ex. B8F). In that assessment, Dr. Adams found Plaintiff "Not Significantly Limited" in eighteen of twenty mental functional abilities. (R. 351-52). She found Plaintiff "Moderately Limited" in the ability to understand and remember detailed instructions, and in the ability to carry out detailed instructions. (R. 351). The ALJ noted that mental restrictions found by the state agency consultants "included moderate limitations in the ability to understand, remember and carry out detailed instructions." (R. 16) (citing Ex. B8F). In her narrative RFC assessment, Dr. Adams opined regarding Plaintiff's understanding and memory: "The claimant can understand and follow simple and some intermediate level instructions. He would have trouble remembering an[d] performing more complex tasks." (R. 353) (emphasis added). From this narrative, it is clear that Dr. Adams is of the opinion that Plaintiff would have trouble remembering and performing complex tasks. It is also clear that she believes Plaintiff can understand and follow simple and some intermediate level instructions. Moreover, the ALJ stated that he agreed with Dr. Adams's opinion. (R. 16). However, in his decision the ALJ used a different

14

terminology than did Dr. Adams, and did not define his term or explain why he chose to limit Plaintiff to "simple to intermediate work" rather than to limit Plaintiff to "simple and some intermediate level instructions."

On their faces, at least, the reports of Dr. Ohlde and Dr. Ecklund-Johnson do not establish unequivocally that Plaintiff is capable of "simple to intermediate work" as the ALJ found.  As is potentially relevant here, the ALJ noted that Dr. Ohlde reported Plaintiff's attention, concentration, social skills, adaptation, and persistence were "adequate," and that Plaintiff had the ability to understand and carry out simple and difficult instructions.  (R. 12).  As to Dr. Ecklund-Johnson, the ALJ found that his report "reflected a mild decline in selected aspects of cognitive ability," but that performance of tasks which are most sensitive to acquired brain dysfunction were intact.  Id.  Even assuming that the ALJ's understanding of the reports is correct, those reports do not require a finding that Plaintiff is capable of "simple to intermediate work," and the ALJ did not explain how they lead to or support that finding.  He did not explain how adequate performance in the specified areas, mild decline in cognitive ability, and the ability to understand and carry out simple and difficult instructions translates into a finding that Plaintiff is able to perform "simple to intermediate work."

Moreover, the reports of Dr. Ohlde and Dr. Ecklund-Johnson are far more nuanced than the summaries provided by the ALJ.  For example (and by no means the only problem with the ALJ's summary), the court is unable to find support for the ALJ's

statement that Dr. Ohlde's report noted the ability to understand and carry out simple and difficult instructions.  Rather, the report stated that Plaintiff "was alert and able to respond to and understand questions and instructions and <u>may be able</u> [to] carry out <u>simple verbal instructions</u> with <u>some possible difficulty</u> and <u>need for monitoring</u> given test results of his memory functioning."  (R. 327) (emphases added).  Earlier in his report, Dr. Ohlde stated that "[i]n performance situations [Plaintiff] would likely have difficulty meeting adequate or average standards due to his borderline/low auditory memory functioning."  (R. 326).  With regard to Dr. Ecklund-Johnson's report, the ALJ did not mention the psychologist's finding that "Mr. Hinck appears to be experiencing very prominent psychological distress and it is likely that factors such as mood disturbance, somatic preoccupation, and pain problems are contributing to the clinical picture, including his cognitive problems."  (R. 548).  It is by no means clear from the psychologists's reports that Plaintiff is capable of "simple to intermediate work."

As the parties agree, and as the ALJ noted, the Commissioner has clarified the difference between evaluating the severity of mental limitations at steps two and three of the sequential evaluation based upon the four broad functional areas identified in the psychiatric review technique and thereafter assessing mental RFC.  Soc. Sec. Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2011).  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment [than the step two and three analysis] by itemizing various functions

16

contained in the broad categories found in" the four mental functional areas.  Id.  RFC

must be expressed in terms of specific work-related functions.  Id. at 148.  "Work-related

mental activities generally required by competitive, remunerative work include the

abilities to:   understand, carry out, and remember instructions; use judgment in making

work-related decisions; respond appropriately to supervision, co-workers and work

situations; and deal with changes in a routine work setting."  Id. at 149; see also, 20

C.F.R. §§ 404.1521(b)(3-6), 416.921(b)(3-6) (examples of basic mental work activities).

Therefore, an ALJ should not state a mental RFC in terms of the four functional areas, but

should make a function-by-function assessment of each of the work-related mental

activities relevant to the case at hand.

       As Plaintiff's brief suggests, the Commissioner has provided a form for

documentation of the mental RFC assessment at the initial and reconsideration review

levels within the agency--Form SSA-4734-F4-SUP.  POMS Sections DI 24510.060 - DI

24510.90; (R.351-54) (form completed in this case).  That form lists twenty basic mental

abilities organized into four divisions:  Understanding and Memory, Sustained

Concentration and Persistence, Social Interaction, and Adaptation.  Id.  The court takes

judicial notice that as was done in this case, when a mental health care provider such as a

psychiatrist or psychologist presents a Medical Source Statement regarding a claimant's

mental abilities, the statement will often include the provider's opinion regarding the

claimant's capacity in twenty mental abilities substantially identical to the twenty basic

17

mental abilities presented on the Commissioner's mental RFC assessment form.  (R. 655-60).

As Plaintiff asserts, and the Commissioner does not dispute, an RFC assessment requires a function-by-function analysis of a claimant's work-related mental abilities, including the mental activities listed in 20 C.F.R. §§ 404.1545(c), 416.945(c).  SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2011).  The activities listed in 20 C.F.R. § 404.1545(c) and § 416.945(c) are among the twenty mental activities identified in the Commissioner's mental RFC assessment form.  While the court is aware of no requirement that an ALJ must utilize the Commissioner's Mental RFC Assessment form in assessing RFC, or must address each of the twenty mental activities identified therein in performing a function-by-function analysis of a claimant's mental abilities, had the ALJ in this case used the form as a guide or a checklist, or at least used terms identified in that form in making his mental RFC assessment, it is likely that the court would be able to understand the findings reached and would be able to determine whether substantial record evidence supports the decision.  As discussed herein, the court is unable to ascertain the meaning of the ALJ's RFC finding that Plaintiff is limited to "simple to intermediate work," leaving the decision unreviewable, and necessitating remand for a proper function-by-function analysis and explanation of the ALJ's findings.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42

U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 27th day of February 2012, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**